# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF WISCONSIN
# MILWAUKEE DIVISION

| | |
|---|---|
| MEFAIL SERIFOSKI, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> MEYER, NJUS, TANICK, PA, <br><br> Defendant. | Case No.: 19-cv-723 <br><br> **CLASS ACTION COMPLAINT** <br><br> **Jury Trial Demanded** |

## INTRODUCTION

1. This class action seeks redress for collection practices that violate the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq*. (the "FDCPA") and the Wisconsin Consumer Act, Chs. 421-427, Wis. Stats. (the "WCA").

## JURISDICTION AND VENUE

2. The Court has jurisdiction to grant the relief sought by the Plaintiff pursuant to 15 U.S.C. § 1692k, and 28 U.S.C. §§ 1331, 1337, and 1367. Venue in this District is proper in that Defendants directed their collection efforts into the District.

## PARTIES

3. Plaintiff Mefail Serifoski is an individual who resides in the Eastern District of Wisconsin (Milwaukee County).

4. Plaintiff is a "consumer" as defined in the FDCPA, 15 U.S.C. § 1692a(3), in that Defendant sought to collect from Plaintiff a debt allegedly incurred for personal, family, or household purposes.

5. Plaintiff is also a "customer" as defined in the WCA, Wis. Stat. § 421.301(17), in that the alleged debt allegedly arose from a consumer transaction that included agreements to defer payment.

6. Defendant Meyer, Njus, Tanick, PA ("Meyer") is a debt collection law firm, with its principal place of business located at 330 2nd Avenue South, Suite 350, Minneapolis, Minnesota 55401.

7. Meyer is engaged in the business of a collection agency, using the mails and telephone to collect consumer debts originally owed to others.

8. Meyer is engaged in the business of collecting debts owed to others and incurred for personal, family or household purposes.

9. Meyer is a debt collector as defined in 15 U.S.C. § 1692a and Wis. Stat. § 427.103(3).

**FACTS**

10. On or about March 18, 2019, Meyer mailed a collection letter to Plaintiff regarding an alleged debt "Synchrony Bank." A copy of the letter is attached to this complaint as <u>Exhibit A</u>.

11. Upon information and belief, the alleged debt referenced in <u>Exhibit A</u> was incurred by use of a "Blains Farm & Fleet" store-branded credit card, which was used only for personal, household, and family purposes.

12. Upon information and belief, the letter in <u>Exhibit A</u> is a form letter, generated by computer, and with the information specific to Plaintiff inserted by computer.

13. Upon information and belief, the letter in <u>Exhibit A</u> is a form debt collection letter used by Meyer to attempt to collect the alleged debt.

14. Enclosed along with Exhibit A is a "Copy of Initial Demand Letter," which is dated September 18, 2018. A copy of the enclosed letter is attached to this complaint as Exhibit B.

15. Upon information and belief, the letter in Exhibit B is another form letter, generated by computer, and with the information specific to Plaintiff inserted by computer.

16. Upon information and belief, the letter in Exhibit B is another form debt collection letter used by Meyer to attempt to collect the alleged debt.

17. Exhibit B contains the debt validation notice that the FDCPA requires to be included with the initial written communication to the consumer. 15 U.S.C. § 1692g.

> Unless you notify this firm within 30 days after receiving this notice that you dispute the validity of this debt, or any portion thereof, this firm will assume the debt to be valid. If you notify this firm in writing within 30 days after receiving this notice that you dispute the debt, or any portion thereof, this firm will obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such verification or judgment. Additionally, upon your written request within 30 days after receiving this notice, this firm will provide you with the name and address of the original creditor, if different from the current creditor.

18. The unsophisticated consumer would be confused by Exhibits A & B, and upon receiving Exhibit B enclosed along with Exhibit A would be unsure whether she still had 30 days to dispute the debt.

19. Exhibit B specifically tells the consumer that if the consumer notifies Meyer "in writing within 30 days after receiving *this notice* that you dispute the debt, or any portion thereof, [Meyer] will obtain verification of the debt …" (emphasis added). Plaintiff received "this notice" in the same envelope as Exhibit A even if Meyer had sent another copy of Exhibit B earlier.

3

20.     In fact, the FDCPA only provides the consumer a right to verification of the debt and to the name and address of the original creditor within thirty days of the consumer's receipt of the *initial* debt communication containing the validation notice. 15 U.S.C. § 1692g(b).

21.     Meyer sent the enclosed copy of Exhibit B well after the 30-day verification period following the date printed on Exhibit B. Thus, Exhibit B tells the consumer that the verification period is extended until 30 days after the consumer receives Exhibit B, which is actually false. 15 U.S.C. § 1692g(b); *see also Jones v. Ameriquest Mortg. Co.,* No. 05-CV-0432, 2006 U.S. Dist. LEXIS 3788 *24-25 (N.D. Ill. Jan. 31, 2006), *aff'd sub nom Hamm v. Ameriquest Mortg. Co.*, 506 F.3d 525 (7th Cir. 2007) (Lender violated the Truth In Lending Act ("TILA") by providing notice of both the TILA, 3-day statutory right of rescission and a "one-week" rescission period not tied to the statute.).

22.     Exhibits A & B did not effectively convey to the consumers their rights under the FDCPA. *McCabe v. Crawford & Co.*, 272 F. Supp. 2d 736, 743 (N.D. Ill. 2003); *see also Desantis v. Computer Credit, Inc.*, 269 F.3d 159, 161 (2d Cir. 2001) (a "debt collector violates the Act if it fails to convey the information required by the Act."); *Jones*, 2006 U.S. Dist. LEXIS 3788 *24-25.

23.     The consumer is not required to rely upon the debt collector to voluntarily comply with the FDCPA. *McCabe*, 272 F. Supp. 2d at 738 ("However, Crawford misses the point of the protection found in § 1692g(a)(4). Although a debt collector may provide verification upon oral notification, the debt collector must provide verification upon *written* notification. If the debtor gives only *oral* notification of the dispute, the FDCPA imposes no requirement on the debt collector to obtain verification of the debt.").

24. Further, <u>Exhibit A</u> falsely represents that an attorney had meaningfully reviewed Plaintiff's file, and determined that the debt was ripe for collection.

25. <u>Exhibit A</u> is printed on Meyer's law firm letterhead, which identifies Meyer as "Attorneys at Law."

26. Finally, <u>Exhibit A</u> appears to be hand-signed by Scott J. Bibeau.

27. On the whole, <u>Exhibit A</u> falsely implies that an attorney was meaningfully involved in the collection of the account and that legal action is imminent.

28. The unsophisticated consumer, receiving a letter from a law firm with the above language, believes that that law firm has been hired to sue the consumer, and that an attorney is personally and professionally involved in the consumer's file.

29. The Seventh Circuit has stated: "An unsophisticated consumer, getting a letter from an 'attorney,' knows the price of poker has just gone up. And that clearly is the reason why the dunning campaign escalates from the collection agency, which might not strike fear in the heart of the consumer, to the attorney, who is better positioned to get the debtor's knees knocking." *Avila v. Rubin*, 84 F.3d 222, 229 (7th Cir.1996).

30. "If a debt collector (attorney or otherwise) wants to take advantage of the special connotation of the word 'attorney' in the minds of delinquent consumer debtors to better effect collection of the debt, the debt collector should at least ensure that an attorney has become professionally involved in the debtor's file." *Id.*; *see also Clomon v. Jackson,* 988 F.2d 1314, 1320-21 (2d Cir. 1993).

31. The Third Circuit has held that collection letters purporting to be "from an attorney" when there was no actual attorney involvement violated the FDCPA, even though the

5

letters included an attempted disclaimer of attorney involvement. *Lesher v. Law Offices of Mitchell N. Kay, PC*, 650 F.3d 993, 995 (3d Cir. 2011).

32. Other Circuits have held that "a lawyer acting as a debt collector must notify the consumer, through a clear and prominent disclaimer in the letter, that the lawyer is wearing a 'debt collector' hat and not a 'lawyer' hat when sending out the letter."

33. <u>Exhibit A</u> does not include any language in the nature of a disclaimer of attorney involvement, let alone a "clear and prominent disclaimer" like the one discussed in *Greco v. Trauner, Cohen & Thomas, L.L.P.*, 412 F.3d 360, 361-62 (2d Cir. 2005). On the contrary, the unsophisticated consumer would interpret the letter as threatening to bring a lawsuit if the consumer does not pay or contact Meyer to make payment arrangements within fifteen days. <u>Exhibit A</u>.

34. Meyer is a high-volume debt collector.

35. Upon information and belief, at the time <u>Exhibit A</u> was mailed to Plaintiff, no attorney had assessed the validity of the alleged debts to the standards required of an attorney.

36. Upon information and belief, at the time <u>Exhibit A</u> was mailed to Plaintiff, no attorney at Meyer had reviewed any documentation underlying Plaintiff's alleged debt, including but not limited to any contract, payment history, or any other documents establishing or evidencing the alleged debts.

37. Upon information and belief, at the time <u>Exhibit A</u> was mailed to Plaintiff, no attorney at Meyer had exercised the professional judgment that Plaintiff was delinquent on his or her debt and a candidate for legal action, nor was any attorney at Meyer meaningfully involved in the decision to send <u>Exhibit A</u> to Plaintiff.

38. Upon information and belief, no attorney at Meyer personally reviewed the Exhibit A in any meaningful sense, before the letter is mailed.

39. Upon information and belief, at the time Exhibit A was mailed to Plaintiff, no attorney at Meyer had reviewed anything relating to Plaintiff's account. Instead, a computer or a non-attorney assistant at Meyer or a third party mailing company generated and mailed Exhibit A as part of a batch of identical, except for personal information, form debt collection letters.

40. Upon information and belief, from the time that consumer debts are placed with Meyer for collection until the time that a legal complaint is drafted, the only employees of Meyer who are directly involved in the collection process of consumer debts are non-attorneys.

41. Upon information and belief, a significant portion of Meyer's debt collection activities consists of computer-automated processes, including the sending of computer-generated form letters like Exhibit A.

42. Moreover, Meyer is frequently engaged to send collection letters to consumers with no intent that Meyer will ever file a lawsuit to collect the debt.

43. Plaintiff was misled and confused by Exhibits A & B.

44. The unsophisticated consumer would be misled and confused by Exhibit A & B.

### *The FDCPA*

45. The FDCPA creates substantive rights for consumers; violations cause injury to consumers, and such injuries are concrete and particularized. *Derosia v. Credit Corp Solutions*, 2018 U.S. Dist. LEXIS 50016, at *12 (E.D. Wis. Mar. 27, 2018) ("'a plaintiff who receives misinformation form a debt collector has suffered the type of injury the FDCPA was intended to protect against' and 'satisfies the concrete injury in fact requirement of Article III.'") (quoting *Pogorzelski v. Patenaude & Felix APC*, 2017 U.S. Dist. LEXIS 89678, 2017 WL 2539782, at *3
7

(E.D. Wis. June 12, 2017)); *Spuhler v. State Collection Servs.*, No. 16-CV-1149, 2017 U.S. Dist. LEXIS 177631 (E.D. Wis. Oct. 26, 2017) ("Spuhler I") ("As in Pogorzelski, the Spuhlers' allegations that the debt collection letters sent by State Collection contained false representations of the character, amount, or legal status of a debt in violation of their rights under the FDCPA sufficiently pleads a concrete injury-in-fact for purposes of standing."); *Lorang v. Ditech Fin. LLC*, 2017 U.S. Dist. LEXIS 169286, at *6 (W.D. Wis. Oct. 13, 2017) ("the weight of authority in this circuit is that a misrepresentation about a debt is a sufficient injury for standing because a primary purpose of the FDCPA is to protect consumers from receiving false and misleading information."); *Qualls v. T-H Prof'l& Med. Collections, Ltd.*, 2017 U.S. Dist. LEXIS 113037, at *8 (C.D. Ill. July 20, 2017) ("Courts in this Circuit, both before and after *Spokeo*, have rejected similar challenges to standing in FDCPA cases.") (citing "*Hayes v. Convergent Healthcare Recoveries, Inc.*, 2016 U.S. Dist. LEXIS 139743 (C.D. Ill. 2016)); *Long v. Fenton & McGarvey Law Firm P.S.C.*, 223 F. Supp. 3d 773, 777 (S.D. Ind. Dec. 9, 2016) ("While courts have found that violations of other statutes . . . do not create concrete injuries in fact, violations of the FDCPA are distinguishable from these other statutes and have been repeatedly found to establish concrete injuries."); *Bock v. Pressler & Pressler, LLP*, No. 11-7593, 2017 U.S. Dist. LEXIS 81058 *21 (D.N.J. May 25, 2017) ("through [s]ection 1692e of the FDCPA, Congress established 'an enforceable right to truthful information concerning' debt collection practices, a decision that 'was undoubtedly influenced by congressional awareness that the intentional provision of misinformation' related to such practices, 'contribute[s] to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy,"); *Quinn v. Specialized Loan Servicing, LLC*, No. 16 C 2021, 2016 U.S. Dist. LEXIS 107299 *8-13 (N.D. Ill. Aug. 11, 2016) (rejecting challenge to Plaintiff's standing based upon alleged FDCPA

statutory violation); *Lanev. Bayview Loan Servicing, LLC*, No. 15 C 10446, 2016 U.S. Dist. LEXIS 89258 *9-10 (N.D. Ill. July 11, 2016) ("When a federal statute is violated, and especially when Congress has created a cause of action for its violation, by definition Congress has created a legally protected interest that it deems important enough for a lawsuit."); *Church v. Accretive Health, Inc.*, No. 15-15708, 2016 U.S. App. LEXIS 12414 *7-11 (11th Cir. July 6, 2016) (same); *see alsoMogg v. Jacobs*, No. 15-CV-1142-JPG-DGW, 2016 U.S. Dist. LEXIS 33229, 2016 WL 1029396, at *5 (S.D. Ill. Mar. 15, 2016) ("Congress does have the power to enact statutes creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute," (quoting *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 623 (7th Cir. 2014)).For this reason, and to encourage consumers to bring FDCPA actions, Congress authorized an award of statutory damages for violations. 15 U.S.C. § 1692k(a).

46. Moreover, Congress has explicitly described the FDCPA as regulating "abusive practices" in debt collection. 15 U.S.C. §§ 1692(a) – 1692(e). Any person who receives a debt collection letter containing a violation of the FDCPA is a victim of abusive practices. *See* 15 U.S.C. §§ 1692(e) ("It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses").

47. 15 U.S.C. § 1692e generally prohibits "any false, deceptive, or misleading representation or means in connection with the collection of any debt."

48. 15 U.S.C. § 1692e(2)(A) specifically prohibits "the false representation of the character, amount, or legal status of any debt."

9

49. 15 U.S.C. § 1692e(3) specifically prohibits: "The false representation or implication that any individual is an attorney or that any communication is from an attorney."

50. 15 U.S.C. § 1692e(10) specifically prohibits the "use of any false representation or deceptive means to collect or attempt to collect any debt."

51. 15 U.S.C. § 1692f generally prohibits "unfair or unconscionable means to collect or attempt to collect any debt."

### *The WCA*

52. The Wisconsin Consumer Act ("WCA") was enacted to protect consumers against unfair, deceptive, and unconscionable business practices and to encourage development of fair and economically sound practices in consumer transactions. Wis. Stat. § 421.102(2).

53. The Wisconsin Supreme Court has favorably cited authority finding that the WCA "goes further to protect consumer interests than any other such legislation in the country," and is "probably the most sweeping consumer credit legislation yet enacted in any state." *Kett* v. *Community Credit Plan, Inc.,* 228 Wis. 2d 1, 18 n**.**15, 596 N.W.2d 786 (1999) (citations omitted).

54. To further these goals, the Act's protections must be "liberally construed and applied." Wis. Stat. § 421.102(1); *see also* § 425.301.

55. "The basic purpose of the remedies set forth in Chapter 425, Stats., is to induce compliance with the WCA and thereby promote its underlying objectives." *First Wisconsin Nat'l Bank v. Nicolaou*, 113 Wis. 2d 524, 533, 335 N.W.2d 390 (1983). Thus, private actions under the WCA are designed to both benefit consumers whose rights have been violated and also competitors of the violators, whose competitive advantage should not be diminished because of their compliance with the law.

10

56. To carry out this intent, the WCA provides Wisconsin consumers with an array of protections and legal remedies. The Act contains significant and sweeping restrictions on the activities of those attempting to collect debts. *See* Wis. Stats. § 427.104.

57. The Act limits the amounts and types of additional fees that may be charged to consumers in conjunction with transactions. Wis. Stats. § 422.202(1). The Act also provides injured consumers with causes of action for class-wide statutory and actual damages and injunctive remedies against defendants on behalf of all customers who suffer similar injuries. *See* Wis. Stats. §§ 426.110(1); § 426.110(4)(e). Finally, "a customer may not waive or agree to forego rights or benefits under [the Act]." Wis. Stat. § 421.106(1).

58. Consumers' WCA claims under Wis. Stat. § 427.104(1) are analyzed using the same methods as claims under the FDCPA. Indeed, the WCA itself requires that the court analyze the WCA "in accordance with the policies underlying a federal consumer credit protection act," including the FDCPA. Wis. Stat. § 421.102(1).

59. Further, the Wisconsin Supreme Court has held that WCA claims relating to debt collection are to be analyzed under the "unsophisticated consumer" standard. *Brunton v. Nuvell Credit Corp.*, 785 N.W.2d 302, 314-15. In *Brunton*, the Wisconsin Supreme Court explicitly adopted and followed the "unsophisticated consumer" standard, citing and discussing *Gammon v. GC Servs. Ltd. P'ship*, 27 F.3d 1254, 1257 (7th Cir. 1994). *Id.*

60. Wis. Stat. § 427.104(1)(g) states that a debt collector may not: "Communicate with the customer … in such a manner as can reasonably be expected to threaten or harass the customer."

61. Wis. Stat. § 427.104(1)(h) states that a debt collector may not: "Engage in other conduct which can reasonably be expected to threaten or harass the customer …."

11

62. Wis. Stat. § 427.104(1)(j) states that a debt collector may not: "Claim, or attempt or threaten to enforce a right with knowledge or reason to know that the right does not exist."

63. Wis. Stat. § 427.104(1)(k) specifically prohibits a debt collector from using "a communication which simulates legal or judicial process or which gives the appearance of being authorized, issued or approved by a government, governmental agency or attorney−at−law when it is not.

64. Wis. Stat. § 427.104(1)(L) states that a debt collector may not: "Threaten action against the customer unless like action is taken in regular course or is intended with respect to the particular debt."

## COUNT I – FDCPA

65. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

66. By enclosing <u>Exhibit B</u>, which included the validation notice, along with <u>Exhibit A</u>, the letters are together misleading as to whether Plaintiff had 30 days to dispute and/or request verification of her alleged debt.

67. Defendant thereby violated 15 U.S.C. §§ 1692e, 1692e(3), 1692e(10), and 1692f.

## COUNT II – FDCPA

68. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

69. <u>Exhibit A</u> creates the false impression that an attorney at Meyer had personally reviewed the circumstances of Plaintiff's alleged debt and <u>Exhibit A</u> itself, and "reached a considered, professional judgment that the debtor is delinquent and is a candidate for legal action," at the time that the letter was mailed to Plaintiff.

70. Before mailing Exhibit A to Plaintiff, no attorney at Meyer had any meaningful involvement with Plaintiff's alleged debt or the letters. *Avila*, 84 F.3d at 229; *Nielsen v. Dickerson*, 307 F.3d 623, 635 (7th Cir. 2002).

71. Defendant thereby violated 15 U.S.C. §§ 1692e, 1692e(3), 1692e(10), and 1692f.

## COUNT III – WCA

72. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

73. Exhibit A creates the false impression that an attorney at Meyer had personally reviewed the circumstances of Plaintiff's alleged debt and Exhibit A itself, and "reached a considered, professional judgment that the debtor is delinquent and is a candidate for legal action," at the time that the letter was mailed to Plaintiff.

74. Before mailing Exhibit A to Plaintiff, no attorney at Meyer had any meaningful involvement with Plaintiff's alleged debt or the letters. *Avila*, 84 F.3d at 229; *Nielsen v. Dickerson*, 307 F.3d 623, 635 (7th Cir. 2002).

75. Defendants thereby violated Wis. Stat. § 427.104(1)(k).

## CLASS ALLEGATIONS

76. Plaintiff brings this action on behalf of a Class, consisting of: (a) all natural persons in the State of Wisconsin (b) who were sent a collection letter in the form represented by Exhibit A to the complaint in this action, (c) and with which letter Meyer enclosed a "Copy of [an] initial demand letter], (d) which "copy" was dated more than 30 days prior to the letter in the form of Exhibit A, (e) seeking to collect a debt for personal, family, or household purposes, (f) where the letter in the form of Exhibit A was dated May 14, 2018 to May 14, 2019, inclusive, (g) and was not returned by the postal service.

13

77. The Class is so numerous that joinder is impracticable. On information and belief, there are more than 50 members of the Class.

78. There are questions of law and fact common to the members of the class, which common questions predominate over any questions that affect only individual class members. The predominant common question is whether Defendant's debt communication violates the FDCPA and the WCA.

79. Plaintiff's claims are typical of the claims of the Class members. All are based on the same factual and legal theories.

80. Plaintiff will fairly and adequately represent the interests of the Class members. Plaintiff has retained counsel experienced in consumer credit and debt collection abuse cases.

81. A class action is superior to other alternative methods of adjudicating this dispute.

## JURY DEMAND

82. Plaintiff hereby demands a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that the Court enter judgment in favor of Plaintiff and the Class and against Defendant for:

(a) actual damages;

(b) statutory damages;

(c) declaratory relief;

(d) injunctive relief;

(e) punitive damages;

(f) attorneys' fees, litigation expenses and costs of suit; and

(g) such other or further relief as the Court deems proper.

Dated: May 14, 2019

                              **ADEMI & O'REILLY, LLP**

By: /s/ Mark A. Eldridge
     John D. Blythin (SBN 1046105)
     Mark A. Eldridge (SBN 1089944)
     Jesse Fruchter (SBN 1097673)
     Ben J. Slatky (SBN 1106892)
     Denise L. Morris (SBN 1097911)
     3620 East Layton Avenue
     Cudahy, WI 53110
     (414) 482-8000
     (414) 482-8001 (fax)
     jblythin@ademilaw.com
     meldridge@ademilaw.com
     jfruchter@ademilaw.com
     bslatky@ademilaw.com
     dmorris@ademilaw.com